**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL STAR ROUTE MAIL CONTRACTORS ASSOCIATION, INC., Plaintiff, | ) | |
| v. | ) | Case No. ___________________ |
| UNITED STATES POSTAL SERVICE, Defendant. | ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff National Star Route Mail Contractors Association, Inc. (the "Star Route Association") states the following for its Complaint against Defendant United States Postal Service (the "Postal Service"):

**INTRODUCTION**

1. The Star Route Association seeks to enjoin the Postal Service from terminating 102 currently operating mail transportation contracts and converting the routes served by those contracts to drivers employed by the Postal Service. The Postal Service intends to take this action to comply with an arbitrator's decision resolving a labor dispute with the APWU, one of its employee labor unions. But the Postal Service is prohibited by law from doing so. Under the Postal Reorganization Act, the Postal Service is required to use the mode of transportation that "best serves the public interest, due consideration being given to the cost of the transportation service under each mode." 39 U.S.C. § 5005(c). Here, neither the arbitrator nor the Postal Service considered the public interest or cost of using each mode of service. Indeed, converting

102 highway transportation routes to Postal Service employees will cost the Postal Service millions of dollars more than it would to continue with the existing contractors.

2. Terminating 102 contracts for mail transportation services will cause serious and irreparable harm to the impacted contractors. Many of these contractors' only source of revenue is from their Postal Service contracts. The terminated contractors will lose more than $57 million in revenue per year, be forced to lay-off long-time employees, and be left with idled and under-utilized equipment and facilities. The contractors will have no right to recoup these losses from the Postal Service or from any other source.

3. Enjoining the Postal Service's implementation of the arbitration award will not harm the Postal Service because the current contracts are less expensive than using Postal Service employees. And no current Postal Service employees would be harmed by an injunction because the routes are currently served by contractors. An injunction would also serve the public's interest in ensuring compliance with federal law.

## PARTIES

4. The Star Route Association is a non-profit corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Washington, DC. The Star Route Association represents and advocates for its members, who are individuals and private companies that provide mail transportation services to the Postal Service under Highway Contract Route ("HCR") contracts.

5. The Star Route Association has standing to bring this action under the standard established in *International Union v. Brock*, 477 U.S. 274 (1986). Star Route Association members would have standing to sue in their own right. The interests the Star Route Association seeks to protect in this case are germane to the purpose of the organization. Neither the claims

asserted nor the relief requested requires the participation of individual members. The declaratory and injunctive relief sought here would inure to the benefit of all members and there is no requirement for individualized proof of damages.

6. The Postal Service is an independent establishment of the Executive Branch of the Government of the United States. 39 U.S.C. § 201. The Postal Reorganization Act of 1970 allows the Postal Service "to sue and be sued in its official name." 39 U.S.C. § 401(1). The Supreme Court has interpreted this statute as a broad waiver of sovereign immunity. *United States Postal Service v. Flamingo Industries (USA) Ltd.*, 540 U.S. 736, 741-44 (2004).

**<u>JURISDICTION AND VENUE</u>**

7. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 & 1339 and 39 U.S.C. § 409(a). *See National Ass'n of Postal Supervisors v. United States Postal Service*, 602 F.2d 420, 429 (D.C. Cir. 1979). The substantive rights asserted by the Association are found in 39 U.S.C. § 5005(c) and in the Due Process Clause of the Fifth Amendment to the United States Constitution.

8. Venue is proper under 28 U.S.C. § 1391(e)(1) and 39 U.S.C. § 409(b). Postal Service headquarters is located within the District of Columbia.

**<u>FACTUAL ALLEGATIONS</u>**

9. The Postal Reorganization Act of 1970 grants to the Postal Service the power to "provide for the collection, handling, transportation, delivery, forwarding, returning, and holding of mail . . . ." 39 U.S.C. § 404(a)(1).

10. The Act permits the Postal Service to obtain mail transportation by contract with third party contractors or by individual Postal Service employees. 39 U.S.C. § 5005(a)(3). The

determination as to whether to use contractors or Postal Service employees is governed by the mandatory requirements of 39 U.S.C. § 5005(c):

> The Postal Service, in determining whether to obtain transportation of mail by contract under subsection (a)(3) of this section or by Government motor vehicle, *shall use the mode of transportation which best serves the public interest, due consideration being given to the cost of the transportation service under each mode*. [39 U.S.C. § 5005(c) (italics added).]

The Postal Service "shall use the mode of transportation which best serves the public interest, due consideration being given to the cost of the transportation service under each mode." There are no exceptions to this requirement.

11. Postal Service contracts with individuals or private companies for the surface transportation of mail are called Highway Contract Route ("HCR") contracts. The Postal Service awards HCR contracts on a competitive basis at a fixed annual price or rate. HCR contracts are typically awarded for a four-year term, and they can be renewed and extended by mutual agreement between the Postal Service and the contractor.

12. The use of Postal Service employees as drivers for the surface transportation of mail is called Postal Vehicle Service ("PVS"). PVS drivers are unionized and represented by the American Postal Workers Union ("APWU").

13. On August 18, 2016, an arbitrator hearing a dispute between the Postal Service and the APWU issued a decision finding that the Postal Service violated a provision of the "National Agreement" requiring advance notice and discussions before contracting out certain routes. A copy of the decision is attached as *Exhibit 1*.

14. As a remedy for the violation, the arbitrator directed the Postal Service to convert 102 active HCR contracts to PVS. The decision sets a deadline of February 18, 2017 for these HCR routes to be converted to PVS. The routes must also remain PVS for at least four years.

15. The arbitrator found that the routes in dispute could have been performed by HCR contractors more cheaply than by PVS. The arbitrator also found that there was little likelihood that the routes would have been converted from HCR contractors to PVS if the Postal Service had timely notified the APWU in accordance with the National Agreement. The arbitrator nevertheless required that all 102 of the HCR contracts be converted to PVS without regard to the public interest and without regard to cost.

16. Neither the Star Route Association nor any of the affected HCR contractors were notified of the APWU's grievance or the arbitration proceeding.

17. Neither the Star Route Association nor any of the impacted HCR contractors were given an opportunity to participate in the arbitration proceeding, to submit evidence, or otherwise to be heard in the arbitration.

18. The Star Route Association and its members first learned of the arbitration award in September 2016. After learning of the arbitration award, the Star Route Association sent a letter dated October 7, 2016 to the Postal Service asking that it seek to vacate the award. The October 7 letter explained that implementing the award would violate 39 U.S.C. § 5005(c) because the requirement to convert the HCR contracts to PVS employees was imposed without regard to which mode "best serves the public interest" and without giving "due consideration" to cost. The letter also asserted that the award violated the affected HCR contractors' Fifth Amendment due process rights.

19. The Postal Service responded to the Association's request in a letter dated November 10, 2016, which the Association received on November 16, 2016. While the Postal Service did not argue that it or the arbitrator complied with the requirements of § 5005(c), the Postal Service stated it would not seek to vacate the award. As to the economic impact to the

HCR contractors, the Postal Service offered nothing. The Postal Service's letter stated that the impacted contractors would not have "viable breach of contract claims" against the Postal Service.

**COUNT I – VIOLATION OF 39 U.S.C. § 5005(c)**

20. Under 39 U.S.C. § 5005(c), the Postal Service is required to "use the mode of transportation which best serves the public interest, due consideration being given to the cost of the transportation service under each mode."

21. The requirements of 39 U.S.C. § 5005(c) are mandatory and cannot be waived or ignored. The Postal Service has no authority to convert an HCR mail transportation route to PVS unless PVS service "best serves the public interest, due consideration being given to the cost of the transportation service under each mode." But the Postal Service plans on converting these HCR contracts to PVS without making that determination. The only § 5005(c) determination that has been made is the original determination that resulted in the award of these HCR contracts.

22. The Postal Service may not avoid the requirements of § 5005(c) to comply with an arbitration award. While the Postal Service is not authorized to delegate the requirements of § 5005(c), even if it were, the arbitrator also failed to make the required determination. Indeed, the arbitrator expressly rejected the notion that cost should be given any consideration.

23. Implementing the requirements of the arbitration award, as the Postal Service intends to do, would thus violate 39 U.S.C. § 5005(c).

24. The contractors performing the HCR contracts designated for conversion to PVS will be irreparably harmed by the loss of their contracts. In addition to more than $57 million in lost annual revenue and lost profit, the impacted HCR contractors will be left with idled and

under-utilized equipment, facilities, and personnel, with many being required to continue to make payments for assets they can no longer put to productive use. The loss of these HCR contracts has serious and irreparable economic consequences for all the impacted HCR contractors.

25. The first step toward termination of the existing HCR contracts is likely to be the issuance of an advance notice of termination per the Termination with Notice clause. Under the clause, the Postal Service can terminate a contract by providing the required days of advance written notice without being liable for the cost impact or consequences of termination. In most contracts, the clause requires only 60 days' advance written notice. For such contracts, to meet an effective contract termination date of February 18, 2017, the Postal Service is likely to issue advance notices of termination by December 18, 2016.

26. Enjoining implementation of the arbitration award would not harm the Postal Service because the current HCR service costs less than PVS service. Enjoining implementation of the arbitration award would not harm PVS employees because no PVS employees are performing these routes and none are in danger of losing their job if the HCR contracts remain in effect. In addition, the arbitrator has retained jurisdiction over the grievance and can fashion a new remedy that does not violate the law.

27. Enjoining the implementation of the planned conversion to PVS would also serve the public interest by enforcing the law.

**COUNT II – VIOLATION OF FIFTH AMENDMENT DUE PROCESS**

28. Pursuant to the Fifth Amendment to the United States Constitution, the government may not deprive citizens of life, liberty, or property without due process of law. Due process requires that the government give advance notice of a contemplated action, an

explanation of the evidence against the citizen, and an opportunity to respond to the allegations, all before the action is taken. A corporation is a citizen for purposes of the due process clause.

29. Each affected HCR contractor has a protected property interest in their HCR contract and in receiving payment for services provided to the Postal Service through the four-year duration of their HCR contract.

30. The termination of these HCR contracts to convert them to PVS would improperly deprive the affected HCR contractors of their property without due process and would therefore violate the due process clause of the Fifth Amendment to the United States Constitution.

**WHEREFORE,** the Star Route Association respectfully requests that the Court grant the following relief:

1. A declaratory judgment that the portion of the August 18, 2016 arbitration award directing the Postal Service to convert HCR contracts to PVS is void and unenforceable as it would violate 39 U.S.C. § 5005(c);
2. A declaratory judgment that the portion of the August 18, 2016 arbitration award directing the Postal Service to convert HCR contracts to PVS is void and unenforceable as it violates the Fifth Amendment due process rights of the affected contractors;
3. A temporary, preliminary, and permanent injunction against the Postal Service from taking any action to implement the portion of the August 18, 2016 arbitration award that directs the Postal Service to convert HCR contracts to PVS; and
4. Such other and further relief as the Court deems appropriate.

**DATED** this 30th day of November 2016.

Respectfully submitted,

/s/ David P. Hendel

David P. Hendel (D.C. Bar No. 370705)
HUSCH BLACKWELL LLP
750 17th St., NW, Suite 900
Washington, DC 20006-4675
Direct line: (202) 378-2356
Fax: (202) 378-2319
david.hendel@huschblackwell.com

/s/ Brian P. Waagner

Brian P. Waagner (D.C. Bar No. 450823)
HUSCH BLACKWELL LLP
750 17th St., NW, Suite 900
Washington, DC 20006-4675
Direct line: (202) 378-2355
Fax: (202) 378-2319
brian.waagner@huschblackwell.com